**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

OAK VALLEY LANDSCAPE & HARDSCAPE, LLC,

     Plaintiff,

v.                                              Case No.: 3:24-cv-00695

CHRISTOPHER QUINN,

SERVE: Christopher Quinn,
       1585 Shenango Road
       New Galilee, PA 16141

QUINNCONCEPTS, INC.,

SERVE: Quinnconcepts, Inc.,
       1585 Shenango Road
       New Galilee, PA 16141

     Defendants.

## COMPLAINT

Plaintiff Oak Valley Landscape & Hardscape, LLC, by counsel, states the following in support of its Complaint against Defendants Christopher Quinn ("Mr. Quinn") and Quinnconcepts, Inc. ("Quinnconcepts"):

## PARTIES

1.     Plaintiff Oak Valley Landscape & Hardscape, LLC ("Oak Valley") is a Virginia corporation with its principal place of business in Richmond, Virginia.

2.     Defendant Mr. Quinn is a natural person residing in the Commonwealth of Pennsylvania and, on information and belief, is the President of Quinnconcepts.

3.      Quinnconcepts is a Pennsylvania corporation with its principal place of business in New Galilee, Pennsylvania.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the lawsuit because the Plaintiff alleges a claim arising under the laws of the United States. 28 U.S.C. § 1331.

5.      The Court also has supplemental jurisdiction over Plaintiff's claims arising under Virginia law, pursuant to 28 U.S.C. § 1367.

6.      The Court also has jurisdiction over the lawsuit because parties have diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

7.      Venue is proper in this District Court because all or a substantial part of the events or omissions giving rise to the claims arose within this judicial district.

## FACTUAL ALLEGATIONS

8.      In approximately 2016, Oak Valley hired Quinnconcepts to provide web-related managed services, including interacting on Oak Valley's behalf with providers of web hosting and domain registration services. Quinnconcepts also provided social media marketing services under the terms of its agreement with Oak Valley.

9.      The parties' agreement remained consistent over the course of approximately eight years during which Mr. Quinn's company billed Plaintiff on a monthly basis for its services.

10.     As of July 2024, Quinnconcepts charged Oak Valley a monthly fee of approximately $300 for the services described above.

11.     Throughout the course of performance of the agreement between the parties, Oak Valley fully performed its obligations to Quinnconcepts.

12.     Oak Valley depends heavily on its website and online marketing activities to acquire customers. Based upon historical sales data, Oak Valley's website over a four-day period would be expected to produce approximately 24 sales leads with a conversion-to-sales ratio of 9.75% and an average order value (AOV) of $34,000.

13.     By late-August 2024, Oak Valley had become dissatisfied with the quality of services provided by Quinnconcepts and notified Mr. Quinn that Oak Valley would be cancelling its services agreement. Consequently, Oak Valley requested that Mr. Quinn transfer control of Plaintiff's oakvalleylh.com domain to a domain registrar account controlled by Oak Valley.

14.     On September 12, 2024, and in response to Oak Valley's request to transfer its oakvalleylh.com domain from an account controlled by Mr. Quinn to an account with domain registrar Namecheap.com controlled by Oak Valley, Mr. Quinn emailed Oak Valley the login credentials for a Wix.com account. Mr. Quinn represented to Oak Valley that oakvalleylh.com was controlled from this Wix.com account and that transfer of the domain from Wix.com to Namecheap could be accomplished by logging into the account. However, access to this Wix.com account was restricted by two-factor authentication (2FA) requiring an additional code which Mr. Quinn did not provide to Oak Valley, despite repeated requests to do so.

15.     After Oak Valley's many attempts to gain Mr. Quinn's cooperation in transferring the account failed, Mr. Quinn became unresponsive to follow up communications from Oak Valley. Oak Valley's marketing efforts consequently suffered paralysis.

16.     On September 26, 2024, Oak Valley again contacted Mr. Quinn seeking to resolve the domain transfer issue, and set a deadline of September 27, 2024 for this routine IT services task to be complete. Finally responding to Oak Valley's repeated communication attempts, Mr. Quinn indicated his refusal to cooperate further with Oak Valley and rejected their deadline.

17.     On September 26, 2024, Mr. Quinn rebuffed Oak Valley's written instructions to transfer control of their domain, which Mr. Quinn understood was of critical importance to the company, by demanding a personal phone call from Oak Valley CEO Warren Turner. A copy of this email correspondence is attached hereto as **Exhibit A.**

18.     Following Mr. Quinn's refusal to cooperate in transferring its domain back to the company's control, Oak Valley's counsel sent a letter to Mr. Quinn to resolve the situation amicably while emphasizing the importance of the domain to Oak Valley's ongoing business operations, and the potential for litigation in the event of Mr. Quinn's continued refusal to transfer Plaintiff's domain. A copy of this letter is attached hereto as **Exhibit B**.

19.     After receiving this letter from Oak Valley's counsel, on September 27, 2024, Mr. Quinn sent an SMS message directly to the CEO of Oak Valley in which Mr. Quinn said, "you pussy … got your lawyers email, very cute, your site will be selling vibrating dildos tomorrow if you don't call me." This SMS correspondence, containing Mr. Quinn's explicit threat to deface Oak Valley's website, is attached hereto as **Exhibit C**.

20.     After issuing this threat to deface Oak Valley's website, Mr. Quinn responded separately to Plaintiff's counsel via email in which he again provided credentials for a Wix.com account which, Mr. Quinn claimed, housed the oakvalleylh.com domain. Mr. Quinn also sent Wordpress credentials for administering the front end of the website itself, which is unrelated to the domain transfer process.

21.     Later in the evening on September 27, 2024, Mr. Quinn sent another SMS message to Oak Valley CEO Warren Turner threatening to remove the company's website from the internet altogether. In the message, contained in Exhibit C, Mr. Quinn threatened that the "site goes down tomorrow. i (sic) make the deadlines".

22.     Mr. Quinn made good his threat to shut down Oak Valley's website on the morning of the following day, September 28, 2024. This action destroyed the company's front end web presence and rendered the business undiscoverable via standard search engine query. A screenshot of the "pending deletion" message that Mr. Quinn's webserver was configured to respond with upon a standard HTTP/S request for Plaintiff's website is attached hereto as **Exhibit D**.

23.     Later in the day on September 28, 2024, Oak Valley officials accessed the Wix.com account provided by Mr. Quinn, only to discover that the account did not contain the company's oakvalleylh.com domain.

24.     Mr. Quinn did not respond to subsequent efforts by Oak Valley counsel to notify him by email that the domain was not controlled from the account provided. Similarly, Mr. Quinn ignored a second letter from Plaintiff's counsel seeking an amicable resolution to the impasse. These communications are attached hereto as **Exhibit E**.

25.     In addition to his malicious and unauthorized take down of Plaintiff's website, Mr. Quinn also, without authorization, deleted files constituting a pre-production version of Oak Valley's planned new website, for which Plaintiff had paid a separate web design vendor approximately $17,000. Email correspondence memorializing the deletion of these files is attached hereto as **Exhibit F**.

26.     Eventually, on October 1, 2024, Mr. Quinn provided the verification code required to transfer the domain, as Oak Valley had been requesting for months.

27.     Mr. Quinn's only communications between the time he maliciously took down the site on the morning of September 28, 2024 until October 1, 2024  consisted of a sarcastic SMS message, captured in Exhibit C, sent to Mr. Turner on the afternoon of September 28, 2024 in which Mr. Quinn wrote "hows (sic) everything going boss?" and a September 29, 2024 comment

left by Mr. Quinn on Plaintiff's publicly-facing official Instagram account announcing a new website, a post on which Mr. Quinn commented "didn't have to be." A screenshot of the Instagram post is attached hereto as **Exhibit G**.

28.     From the time Mr. Quinn took down the website on the morning of September, 2024, through October 2, 2024, Oak Valley had not received a single sales lead. This is highly unusual and directly attributable to the loss of its website given that the Plaintiff receives approximately 100 sales leads in a typical month.

29. Since Mr. Quinn's malicious takedown of the website, Oak Valley has therefore suffered the loss of approximately $79,560 in expected revenue. Given that Mr. Quinn not only took down the Oak Valley website, but also deleted files comprising a planned replacement website, Oak Valley has been left urgently scrambling to pay for web design services on emergency basis and remains without a website on its domain at time of filing. As a result, damages from lost sales leads are reasonably expected to rise further. Based upon consultations with its current web design vendor, Oak Valley estimates it could take up to 30-days to field a replacement website, which would likely result in lost revenue damages exceeding $500,000.

## COUNT ONE: FEDERAL COMPUTER FRAUD AND ABUSE – 18 U.S.C. § 1030(a) & (g) (Mr. Quinn)

29.     Plaintiffs incorporate by reference each of the above paragraphs.

30.     Oak Valley's website and domain name are critically important property that are stored and administered on high-speed data processing devices, e.g. computer servers, which are protected under federal law.

31.     The Federal Computer Fraud and Abuse Act (CFAA) imposes civil and criminal liability on any person who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization,

to a protected computer," § 1030(a)(5)(A), or who "intentionally accesses a protected computer without authorization, and a s a result of such conduct, causes damage and loss", § 1030(a)(5)(B), or who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss," §1030(a)(5)(C), or who "with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any … threat to cause damage to a protected computer," §1030(a)(7)(A).

32.     The CFAA provides that any person who suffers damage or loss by reason of a violation of the Act may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. 18 U.S.C. § 1030(g).

33.     Oak Valley has suffered irreparable losses and damages following Mr. Quinn's malicious and unauthorized actions taking down its website.

34.     As of date of filing, Oak Valley has suffered damages in the form of approximately $79,560 in lost revenue. Separately, Mr. Quinn's deletion of files comprising a replacement website have caused a further delay in the amount time that will pass before Oak Valley is able to deploy a replacement website. Mr. Quinn's take down of the website, his holding hostage Plaintiff's domain, and his destruction of Oak Valley's data will likely result in further damages in the form of lost revenue in excess of $500,000, based upon Oak Valley's typical monthly revenue projections.

35.     Mr. Quinn exceeded his authority and authorized access by taking Oak Valley's website off the internet, following his unsuccessful attempts to extort the Oak Valley CEO by leveraging his control over the company's domain in a demand for a personal phone call from the CEO when it became apparent that Oak Valley was ending the services agreement between the parties.

36.     In executing on his threat to take down Plaintiff's website, Mr. Quinn knowingly and maliciously entered certain password codes and commands so as to intentionally cause damages to Oak Valley's domain, its website, business reputation, marketing efforts, and customer acquisition capability.

37.     In attempting to leverage his control of the domain to extort the Oak Valley CEO into a personal phone call, Mr. Quinn was pursuing a quid pro quo with the intent to defraud Oak Valley by trafficking or monetizing passwords and data through which Oak Valley's website and website data were accessed, thus affecting interstate commerce.

39.     Oak Valley's website and domain name are critically important property that are stored and administered on high-speed data processing devices, e.g., computer servers, which are protected under federal law.

40.     Mr. Quinn violated federal law because his authority over the Oak Valley domain was curtailed after receiving the company's request for transfer, and his authorization was for the limited purpose of effecting the requested transfer to Oak Valley's new registrar.

41.     In holding hostage Plaintiff's domain, and thus to a large degree the business itself, hostage, by issuing threats to deface and shut down Plaintiff's website, and by maliciously carrying out those threats, Mr. Quinn inflicted grave harm on the Plaintiff. Mr. Quinn's actions violated the CFAA under § 1030(a)(5)(A), § 1030(a)(5)(B), § 1030(a)(5)(C), and § 1030 (a)(7)(A).

### COUNT TWO: VIRGINIA COMPUTER CRIMES ACT – Va. Code Ann. § 18.2-152
### (Mr. Quinn)

42.     Plaintiff adopts and fully incorporates all of the foregoing paragraphs of this Complaint.

43.     The section of the Virginia Computer Crimes Act which prohibits computer trespass holds that "it is unlawful for any person, with malicious intent, or through intentionally deceptive means and without authority to … temporarily or permanently remove, halt, or otherwise disable any computer data, computer programs or computer software from a computer network…" Va. Code Ann. § 18.2-152.4(A)(1).

44.     The Virginia Computer Crimes Act provides a civil remedy for "any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivision A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent [such person] may sue therefor and recover for any damages sustained and the costs of the suit. Without limiting the generality of the term, "damages" shall include loss of profits." Va. Code. Ann. § 18.2-152.12(A).

45.     The section of the Virginia Computer Crimes Act which prohibits computer trespass holds that "it is unlawful for any person, with malicious intent, or through intentionally deceptive means and without authority to … temporarily or permanently remove, halt, or otherwise disable any computer data, computer programs or computer software from a computer network…" Va. Code Ann. § 18.2-152.4(A)(1).

46.     Mr. Quinn's actions violated the Virginia Computer Crimes Act, § 18.2-152.4(A)(1) because he (i) temporarily or permanently removed, (ii) without authority, (iii) computer data in the form of Oak Valley's website, (iv) with malicious intent, evidenced by Mr. Quinn's threats made prior to his take down of the site, and his sarcastic taunting of Mr. Turner afterwards.

47.     Section 18.2-152.4 of the Virginia Computer Crimes Act further provides that it is unlawful for any person with malicious intent to "alter, disable, or erase any computer data, computer programs or computer software." Va. Code Ann. § 18.2-152.4(A)(3).

9

48.     Mr. Quinn's actions violated the Virginia Computer Crimes Act section 18.2-152.4(A)(3) because he (i) disabled, (ii) without authority, (iii) computer data in the form of Oak Valley's website, and furthermore (iv) erased files comprising Plaintiff's planned new website, (v) with malicious intent.

## COUNT THREE: TRESPASS TO CHATTELS
### (Mr. Quinn)

49.     Plaintiff adopts and fully incorporates all of the foregoing paragraphs of this Complaint.

50.     The oakvalleylh.com domain, the associated website, and the attendant data are the property of Plaintiff.

51.     After being informed of Oak Valley's decision to discontinue services, Quinnconcepts and Mr. Quinn no longer had authority over Oak Valley's data, domain, or website, other than for the limited purpose of effecting their transfer.

52.     Despite being informed that he lacked authority to do so, Mr. Quinn deliberately and maliciously retained possession of Oak Valley's property, specifically its data and domain address.

53.     Mr. Quinn went further than mere unauthorized access and issued computer commands causing Plaintiff's website to be taken offline and for Plaintiff's data to be deleted.

54.     Mr. Quinn's intentional and unauthorized access to Oak Valley's domain, web site, and data injured Plaintiff's possessor interest in its website, web domain, data, and its business goodwill.

55.     Mr. Quinn's acts of trespass were deliberately undertaken with malicious intent, or with such recklessness as to evince a conscious disregard of the rights of others, thereby justifying the imposition of punitive damages in an amount sufficient to punish Mr. Quinn and deter others.

## COUNT FOUR: CONVERSION
### (Mr. Quinn)

56.     Plaintiff adopts and fully incorporates all of the foregoing paragraphs of this Complaint.

57.     Mr. Quinn misappropriated and converted for his own use Oak Valley's domain name, website, and data related to both the pre-existing website and a website that Plaintiff planned to launch prior to Mr. Quinn's deletion of the related files.

58.     At all times after giving Mr. Quinn notice of its decision to cease its services agreement with Quinnconcepts, Oak Valley owned and was entitled to exclusive use and possession of its web domain, website, and data.

59.     Despite lacking authorization from Oak Valley, Mr. Quinn exploited his prior access to the data, given under the defunct services agreement, for his own use and with the intent to deprive Oak Valley of the use and benefit of its property.

60.     Oak Valley has suffered actual damages as a result of Mr. Quinn's conversion in an amount to be determined at trial, including, at a minimum, the loss of $17,000 in web design work destroyed as a result of Mr. Quinn's deletion of Oak Valley's data, and the expenses incurred by Oak Valley in an effort to procure a new domain and bring a new commercially-viable website online to replace the converted property.

61.     Mr. Quinn's activities were undertaken with actual malice or under circumstances amounting to a willful and wanton disregard of Oak Valley's rights, and the Plaintiff is therefore entitled to punitive damages.

## COUNT FIVE: BREACH OF CONTRACT
### (Quinnconcepts)

62.     Plaintiff adopts and fully incorporates all of the foregoing paragraphs of this Complaint.

63.     Beginning in approximately 2016 and lasting until mid-August 2024, in consideration of a regular monthly payment of approximately $300, Quinnconcepts provided managed services to Oak Valley including interacting with web hosting providers and the provision of social media marketing services.

64.     The parties each understood the terms of their agreement and each side performed under the contract in a substantially unchanged manner during a course of performance that lasted approximately eight years.

65.     Oak Valley fully complied with its obligations to Quinnconcepts under the terms of their agreement.

66.     By entering into its agreement with Oak Valley, and in consideration for fees it received, under applicable customs of trade usage as commonly practiced in the managed web services industry, Quinnconcepts undertook an obligation to safely handle Oak Valley's data and other intangible property of Oak Valley entrusted to its care, e.g. the web domain, and further to return Oak Valley's intangible property upon the termination of the agreement.

67.     As a result of the deliberate destruction and unlawful retention of Oak Valley's intangible property, Quinnconcepts breached the terms of its agreement with Oak Valley.

68.     As a result of Quinnconcept's breach of the services agreement, Oak Valley has suffered, and will continue to suffer damages in the form of lost revenue and added expenses, and faces irreparable harm for which consequential damages will not be a sufficient remedy,

including damage suffered to its business reputation, the consequent strengthening of its

competition, and a likely degradation of its market share.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Oak Valley Landscape & Hardscape, LLC prays for the following

relief:

(a)   Judgment in Oak Valley's favor and against Defendant Mr. Quinn for violations of the

Computer Fraud and Abuse Act, violations of the Virginia Computer Crimes Act,

trespass to chattels, and conversion which resulted in harm to Oak Valley in the form

of lost revenue, damage to its business reputation, likely degradation of market share,

and expenses associated with paying web services vendors to deploy a new site on an

emergency basis, as set forth in Counts I through IV herein;

(b)   Judgment in Oak Valley's favor and against Defendant Quinnconcepts for breach of

contract which occurred when Quinnconcepts failed to relinquish control over Oak

Valley's domain and when it destroyed Oak Valley's data rather than return it safely,

as set forth in Count V herein;

(c)   Compensatory damages as a result of Defendants' unlawful acts and omissions in an

amount to be proven at trial, including but not limited to loss of revenue, loss of

business goodwill, reputational harm, costs of suit as provided for in the claim

asserted under the Virginia Computer Crimes Act in Count II, incidental expenses

associated with Oak Valley's efforts to restore a web front end and online marketing

capability, and pre-judgment and post-judgment interest as allowed by law as a result

of the harm inflicted by the Defendants on Oak Valley in the form of lost revenue,

damage to its business reputation, likely degradation of market share, and expenses

13

associated with paying web services vendors to deploy a new site on an emergency

basis .

(d)     Punitive damages in an amount to be proven at trial and sufficient in amount to

punish and deter the egregious, intentional, wanton, willful, reckless, and malicious

conduct related to Mr. Quinn's tortious acts described in Counts III and IV of this

Complaint;

(e)     Such other relief as the Court may deem to be just and proper.

A trial by jury is demanded.


Respectfully submitted,

OAK VALLEY LANDSCAPE & HARDSCAPE, LLC



By: ___/s/John P. O'Herron_____
John P. O'Herron (VSB No. 79357)
J. Buckley Warden IV (VSB No. 79183)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Phone: (804) 649-7545
Fax: (804) 780-1813
Email: joherron@t-mlaw.com
Email: bwarden@t-mlaw.com

*Counsel for Oak Valley Landscape & Hardscape, LLC*